IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

FILED

00 NOV -8 AM 11: 03

CLERK, U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA, FLORIDA

**HEIDI BLAKE,**          CASE NO. 8:00CV2301-T-23F

     **Plaintiff,**

vs.

**LOCKHEED MARTIN CORPORATION,**      **COMPLAINT**
**and LOCKHEED MARTIN MISSLES AND**
**FIRE CONTROL (ORLANDO DIVISION),**

     **Defendant,**
_____/

## PRELIMINARY STATEMENT

1.  This action seeks declaratory and monetary relief for Plaintiff HEIDI BLAKE for the denial of equal employment opportunity to her. Plaintiff also seeks to obtain monetary relief on the basis of unlawful employment practices by Defendants, "LOCKHEED MARTIN CORPORATION and LOCKHEED MARTIN MISSLES AND FIRE CONTROL (ORLANDO DIVISION)", its agents and employees.

2.  This complaint also alleges damages to the Plaintiff as a result of Defendants' maintaining a policy, practice, custom or usage, including, but not necessarily limited to the following:

     (a) discriminating against Plaintiff with respect to the terms, conditions, and privileges of her employment because she is a female and an unwed mother;

     (b) limiting and otherwise creating an environment of psychological harassment and professional segregation in ways which damaged Plaintiff's personal and professional status and otherwise affected her status as an employee of Defendants, because of her sex and marital status;

T 7208
# 150.00
**SCANNED**

(c) harassing Plaintiff and otherwise doing injury to her person and professional reputation; and

(d) retaliating against Plaintiff for the filing of grievances with respect to the disparate treatment perpetuated by Defendants.

## JURISDICTION

3. This action arises under provisions of Title VII of the Acts of Congress known as the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq. and the Civil Rights Act of 1991, 42 U.S.C.§1981(a), 704(a); FMLA; Florida Civil Rights Act Chapter 760.10, et al.

4. This Court also has jurisdiction pursuant to 28 U.S.C.§1331 and 28 U.S.C.§1343(4).

5. All conditions precedent to jurisdiction under §706 of Title VII, 42 U.S.C.§§ 2000e-5(f)(3), have occurred or have been complied with:

(a) A charge of employment discrimination (hereinafter, "the Charge") on the basis of race discrimination, sex discrimination, and retaliation was filed with the Equal Opportunity Commission (hereinafter "EEOC") within 180 days of the commission of the unlawful employment practices alleged herein.

(b) A Notification of Right to Sue was received from the EEOC on August 15, 2000. [See attached.]

(c) Plaintiff's original complaint was filed with the Court within 90 days of receipt of the EEOC's Notification of Right to Sue.

6. More than 180 days have elapsed since the filing of the Charge with the EEOC.

7. All of the discriminatory employment practices alleged in this complaint occurred within the Middle District of Florida.

8. This dispute involves a foreign corporation authorized and doing business in the state of Florida and involved in interstate commerce which has violated the civil rights of the Plaintiff in violation of the Constitution of the United States as well as certain federal statutes.

9. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. §1367 for Plaintiff's state law claims against Defendants.

## STATUS OF THE PARTIES

10. Plaintiff, HEIDI BLAKE, (hereinafter "Plaintiff") is a citizen of the United States and the State of Florida, resides in Palm Beach County and is a female and unwed mother of one child.

11. Defendants, LOCKHEED MARTIN CORPORATION and LOCKHEED MARTIN MISSLES AND FIRE CONTROL (ORLANDO DIVISION), (hereinafter referred to collectively as "Defendants") are employers as defined in §701(b), (g), and (h) of the Civil Rights Act of 1964, 42 U.S.C. §2000e(b), (g), and (h), in that Defendants affect commerce and employ at least fifteen (15) persons.

## COUNT I - TITLE VII VIOLATION: DISCRIMINATION BASED UPON SEX

12. Plaintiff repeats and realleges the allegations of paragraphs 1 through 11 above with the same force and effect as though fully set forth herein.

13. Plaintiff believes that she was denied equal opportunity in the terms, conditions, and privileges of her employment with Defendants on account of her sex, based on the following alleged facts:

3

14. On or around August 1996, Plaintiff commenced her employment with Defendants as a member of the JASSM Program.

15. At all times during her employment with Defendants, Plaintiff was qualified for her position(s) and performed her job in a satisfactory manner.

16. On or about October 1996, upon request of her Director, Jim McKenzie, Ms. Blake assumed the duties and job responsibilities for the position of Foreign and International Security Administrator; a position for which her experience and ability qualified her.

17. The position of Foreign and International Security Administrator had previously been held by a male, Mr. Charles Davis, who received higher pay and higher classification than Ms. Blake for the same if not substantially similar work.

18. Approximately January of 1997, Ms. Blake satisfied the certification requirements for the title of FSO [Facility Security Officer]; thereby changing her title to that of Foreign and International Security Administrator/FSO.

19. Ms. Blake retained the job duties and responsibilities associated with the position of Foreign and International Security Administrator/FSO until April 1997.

20. Plaintiff's Director, Jim McKenzie, offered her the position of Foreign and International Security Administrator/FSO on a permanent basis; this offer was witnessed by Clauda Alvear Ms. Blake's co-worker.

21. Ms. Blake's business cards, letterhead and correspondence to clients communicated her position as Foreign and International Security Administrator/FSO. Her responsibilities included but were not limited to management of 5 companies; three European and two domestic; as well as liaison for intelligence matters.

22. On or about January 1997, Mr. Mark Lucas became Ms. Blake's direct supervisor.

23. In February 1997, Ms. Blake requested a raise from Mr. Lucas for the duties she had assumed as well as the additional duties required of her. She was denied the raise.

24. Shortly thereafter, Ms. Blake was informed by Mr. Lucas that the position of Foreign and International Security Administrator/FSO had been offered to Mr. Steve Slocum who would become her superior beginning in April, 1997. She was told that she would retain all of her responsibilities as well as be required to train and familiarize Mr. Slocum with the international community and the work she performed.

25. Mr. Slocum was less qualified than Ms. Blake for the position of Foreign and International Security Administrator/FSO as he had no prior experience in the intelligence field and was not FSO certified.

26. In May 1997, Ms. Blake approached Mr. Slocum about filing an EEOC complaint due to the disparate treatment she was being subjected to. Mr. Slocum contacted Mr. Lucas who proceeded to yell and berate Ms. Blake for attempting to go out of the office with internal office problems.

27. On or about April, 1997, Ms. Blake, intimidated by the response of her direct supervisor regarding filing of an EEOC charge, contacted Human resources, via memorandum. Ms. Blake requested an official job re-evaluation wherein she cited the disparate pay she had received for the job duties she had assumed from Mr. Charles Davis.

28. It was after notification to Human Resources that Ms. Lucas was subjected to retaliatory behavior by her supervisor Mr. Lucas. This retaliatory behavior continued until Ms. Blake's termination date and included but was not limited to the following:

a. Ms. Blake was forbidden by Mr. Lucas to attend professional meetings; in contrast, male employees in her department were permitted to attend the meetings;

b. Ms. Blake was forbidden by Mr. Lucas from attending internal staff meetings; in contrast, male employees in her department were permitted to attend the meetings

c. Upon direct order of Mr. Lucas, Ms. Blake was not permitted to report targeting of U.S. citizens abroad; in contrast, male employees in her department were permitted to report targeting of U.S. citizens abroad;

d. Upon direct order of Mr. Lucas, Ms. Blake was not permitted to report to government or intelligence agencies prior to filing of memorandums;

e. Mr. Lucas extended his middle finger to Ms. Blake in a hostile, demeaning and insulting manner outside of her cubicle, this incident was witnessed by a co-worker;

f. Ms. Blake was prevented from attending seminars, specifically the Tracer Project in 1998, which would have furthered her career and employment opportunity within the company; in contrast, male employees in her department were permitted to attend the seminars;

g. Upon direct order of Mr. Lucas, Ms. Blake was not allowed to e-mail or talk to the Vice President of the company; in contrast, male employees in her department were permitted to e-mail or talk to the Vice President;

   h. Upon direct order of Mr. Lucas, Ms Blake was not permitted to submit liaison activity reports; and

   I. Upon direct order of Mr. Lucas, Ms. Blake was told she was to sign nothing and have everything sent through Mr. Slocum.

  29. Ms. Blake then contacted Ms. Mary Alice Wesley, Human Resources Representative, and informed her of the retaliation she was subjected to as a direct result of her intent to file an EEOC complaint. Despite this meeting, the retaliatory behavior continued.

  30. During her employment with Defendants, Ms. Blake was also subjected to retaliatory, harassing and intimidating tactics by agents of Defendants in the scope and authority of their positions, this included but was not limited to the following:

   a. Being called into a room alone with Mr. McKenzie, Mr. Lucas and Mr. Slocum and being threatened physically and verbally to sign a written reprimand;

   b. When Ms. Blake contacted corporate regarding the proper procedures for reporting of intelligence incidences and/or foreign targeting, as per Mr. Lucas' orders, she was called into the conference room alone with Mr. McKenzie, Mr. Lucas and Mr. Slocum where she was spit at and told the following:

> "I don't give a damn who you think is in charge... I make the decisions and I don't care if you like it or not.... How dare you go to my boss.... I don't care what corporate told you..."

This incident resulted in Ms. Blake crying uncontrollably and having to leave the conference room in view of her co-workers.

31. Ms. Blake once again contacted the director of Human Resources, this time voicing her concerns for being held responsible for violations of the requisite procedures for reporting of intelligence incidences and/or foreign targeting. Ms. Blake was told not to worry about it.

32. In September 1998, Ms. Blake notified Mr. Pete Miller [DoD Security] of her pregnancy and he stated, "Well, of course that brings with it the stigma of an unwed mother to the security department.". Ms. Blake immediately objected to the comment and then contacted Mr. Slocum; no action was taken by Mr. Slocum.

33. In October 1998, Ms. Blake was given a pay increase under the guise of a raise. Mr. McKenzie communicated to the staff that Ms. Blake was the biggest pain in the ass the department had. Ms. Blake later found out the raise was merely an adjustment to bring her up to the bottom of her current pay level otherwise she would have been below her base which is contrary to company policy.

34. Ms. Blake's professional responsibilities were systematically taken away and limited to make her vulnerable to impending lay-off status, Ms. Blake complained of lack of work and responsibility to Mr. Slocum, Mr. Miller and other staff members. Defendants' intentional actions resulted in a systematic job-responsibility reduction which included, but was not limited to the following:

   a. On or about July 1998, the three European companies Ms. Blake had supervision over were transferred to Mr. Pete Miller upon his completion of FSO certification.

   b. Relegation of clerical work in the department as all other job responsibilities had been taken away.

35. On February 4, 1999, Ms. Blake went into labor in her 28th week of pregnancy. This resulted in her baby being placed in the Intensive Care Unit on life sustaining apparatus'.

36. On February 16, 1999 Ms. Blake was placed on paid medical leave. Effective March 1999 Ms. Blake received approval for five weeks leave time pursuant to the Family Medical Leave Act with her return to work to commence on May 3, 1999.

37. On March 25, 1999, Ms. Blake was contacted by Mr. Slocum via e-mail stating "we need to chat".

38. On March 26, 1999, Ms. Blake was contacted by Steve Slocum and placed on intercom with Mark Lucas, and Jim McKenzie. During this conversation Ms. Blake was notified that she was laid off with two weeks notice effective **AFTER** her return from Family Medical Leave Act leave. She was told during this conference call, "Well, look at it this way...at least you get to spend more time with your new baby.".

39. Ms. Blake was informed during this conversation that a 30% reduction was required by Defendants and this resulted in her layoff.

40. Ms. Blake immediately contacted Steve Slocum to inquire why she had been chosen for the lay-off; Mr. Slocum stated the lay off was based upon time at Lockheed. Ms. Blake then inquired why Mr. Miller had not been laid off since he had less time at Lockheed than she had. No explanation was provided.

41. Ms. Blake then inquired if a male <u>temporary</u> co-worker was being laid off and she was told no.

42. On March 27, 1999 Ms. Blake was contacted by Ms. Sharon Y. Williams, a co-worker, and first learned of a job in Troy Alabama for which she was qualified. This position in Troy had been offered to other employees, but not to plaintiff.

43. When Ms. Blake inquired as to why she was not offered the position in Troy, Alabama his response was "Oh you'd be interested in that?".

44. On April 1999, Ms. Blake was contacted by Mr. Slocum and told that she was not being considered for the position in Troy as she was not qualified.

45. In fact, Ms. Blake was qualified for the position as she had been hired for that same program when she had initially worked for Defendants and she had also been FSO for the company governing the project.

46. On April 30, 1999, Ms Blake learned that Defendants had laid off a sufficient number of employees, exclusive of Ms. Blake, to meet their quota of four people or 30%. Accordingly, Ms. Blake's layoff was not necessary for the 30% reduction as she had been led to believe by Defendants.

47. To date Ms. Blake has yet to receive formal notification of her lay off status from Defendants.

48. Additionally, Defendants sought applicants for positions for which Ms. Blake was fully qualified yet refused to consider her for.

49. Ms. Blake's employment was terminated effective May 3, 1996.

50. Because sex was a motivating factor in Defendants' employees' treatment of Plaintiff described above, including Defendants' termination of Plaintiff's employment, Defendants violated Title VII.

## COUNT II - TITLE VII VIOLATION:
## HOSTILE WORK ENVIRONMENT BASED ON SEX

51. Plaintiff repeats and realleges paragraphs 1-11 and 14-15 with the same force and effect as though fully set forth herein.

52. From and after Plaintiff's commencement of employment, Defendants' employees engaged in a continuous course of conduct toward her that was severe and pervasive enough to create a hostile and abusive work environment, including without limitation the actions set forth in paragraphs 26-30, 32-34, 38, 46-49 above and the following actions:

53. While Plaintiff was pregnant, Defendants' male employees made numerous comments about her status as a single mother, for the purposes of embarrassing, humiliating, and degrading Plaintiff.

54. The actions of Defendants' agents and employees described above were engaged in during the course, and within the scope, of their employment and constituted harassment of Plaintiff which was motivated by her sex, in violation of Title VII.

55. The harassment of Plaintiff by Defendants' employees created a hostile and abusive working environment for Plaintiff which limited her employment opportunities, segregated her professionally, damaged her professional reputation and status as an employee of Defendants, and caused her serious emotional distress and mental anguish.

## COUNT III - VIOLATION OF FAMILY MEDICAL LEAVE ACT

59. Plaintiff repeats and realleges paragraphs 1-11, and 14-15 with the same force and effect as though fully set forth herein.

60. As an employee of Defendants, Plaintiff was an eligible employee for leave under the Family Medical Leave Act (hereinafter, "FMLA"), as defined in 29 U.S.C. §2611(2).

61. Defendants is a public agency and a covered employer under the FMLA, as defined in 29 U.S.C. 2611(4).

62. Plaintiff was entitled to FMLA leave under 29 U.S.C. §2612(a)(1)(D) by reason of her premature pregnancy which involved inpatient care and thereafter involved continuing treatment by a health-care provider for her new born child.

63. The actions of Defendants' employees alleged in paragraphs 35-49 above interfered with, restrained, and/or denied Plaintiff the right to obtain FMLA leave and constituted a violation of the FMLA.

64. The actions of Defendants' employees in terminating Plaintiff's employment while on FMLA leave was in violation of the FMLA.

## COUNT IV - TITLE VII VIOLATION: DISCRIMINATION BASED UPON MARITAL STATUS

65. Plaintiff repeats and realleges paragraphs 1-11, and 14-15 with the same force and effect as though fully set forth herein.

66. The actions of Defendants alleged in paragraphs 32-47 were engaged in during the course and within the scope of their employment and were a direct result of Plaintiff's status as an unwed mother.

67. Because marital status was a motivating factor in Defendants' employees treatment of Plaintiff described above, including Defendants' termination of Plaintiff's employment, Defendants violated Title VII.

## COUNT V- VIOLATION OF THE FCRA/CHAPTER 760
## DISCRIMINATION BASED UPON MARITAL STATUS

68.     Plaintiff repeats and realleges paragraphs 1-11, and 14-15 with the same force and effect as though fully set forth herein.

69.     The actions of Defendants and Defendants' employees, alleged in paragraphs 32-47 were engaged in during the course and within the scope of their employment and were a direct result of Plaintiff's status as an unwed mother.

70.     Because marital status was a motivating factor in Defendants' employees treatment of Plaintiff described above, including Defendants' termination of Plaintiff's employment, Defendants violated Florida Civil Rights Act Chapter 760.10.

## COUNT VI - TITLE VII VIOLATION
## RETALIATION

71.     Plaintiff repeats and realleges paragraphs 1-11, and 14-15 with the same force and effect as though fully set forth herein.

72.     Plaintiff engaged in protected conduct when she notified her supervisor as well as Human Resources as alleged in paragraphs 26, 27, 29, 31 of the disparate compensation and treatment as well as the hostile work environment she was subjected to.

73.     Defendants knew that Plaintiff had complained of the discriminatory behavior as alleged in paragraphs 26, 27, 29, 31.

74.     Defendantss actions of retaliation alleged in paragraphs 29, 28, 30, 34, 38-47 had an adverse effect on Plaintiff's personal and professional status resulting in her termination.

75.     Defendants' hostile actions alleged in paragraphs 26, 27, 28, 30, 49 were because and a direct result of Plaintiff's notification of the disparate treatment to Defendants.

76. Because Defendants' actions were motivated by Plaintiff's notification of unfair, discriminatory treatment as described above, including Defendants' termination of Plaintiff's employment, Defendants retaliated against Plaintiff in violation of Title VII.

## COUNT VII- NEGLIGENT RETENTION

77. Plaintiff repeats and realleges paragraphs 1-11, and 14-16, 22 with the same force and effect as though fully set forth herein.

78. During the course of Plaintiff's employment Defendants became aware or should have become aware of the problems alleged in paragraphs 20, 23-27, 29, 31 relating to Plaintiff.

79. The actions of Lucas, Slocum and Miller indicate unfitness.

80. Despite notification, Defendants failed to take further actions such as investigation, discharge or reassignment of Plaintiff's complaints.

81. Accordingly, Defendants negligently retained Lucas, Slocum and Miller which resulted in Plaintiff's termination.

## COUNT VIII - VIOLATION OF THE FCRA/CHAPTER 760 DISCRIMINATION BASED UPON SEX

82. Plaintiff repeats and realleges paragraphs 1-11, and 14-15 with the same force and effect as though fully set forth herein.

83. The actions of Defendants and Defendants' employees, alleged in paragraphs 16-49 were engaged in during the course and within the scope of their employment and were a direct result of Plaintiff's status as an unwed mother.

84. Because Plaintiff's sex was a motivating factor in Defendants' employees treatment of Plaintiff described above, including Defendants' termination of Plaintiff's employment, Defendants violated Florida Civil Rights Act Chapter 760.10.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays this Court will:

(1) Declare that the above-alleged acts of Defendants, its agents and employees constitute sex discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended; the Family Medical Leave Act; and Florida Civil Rights Act Chapter 760;

(2) Direct Defendants to review and reconstruct Plaintiff's personnel records to reflect the promotions and salaries Plaintiff would have received but for Defendants' illegal acts, and to expunge all derogatory information from Plaintiff's personnel file which resulted from the discriminatory and retaliatory acts of Defendants or any of its agents and employees;

(3) Award damages for all discriminatory acts, including back pay, front pay, fringe benefits, loss of employment opportunities for future pay and advancement equal to the amount Plaintiff would have earned but for the discriminatory acts of Defendants and its agents and employees, and compensatory damages. These damages shall be proven at time of trial;

(4) Award Plaintiff damages sustained as a result of emotional distress, including medical expenses. These damages shall be proven at time of trial;

(5) Award Plaintiff damages sustained due to the negligent retention of Defendants' employees, Mark Lucas; Steven Slocum and Peter Miller.

(6) Award Plaintiff reasonable attorney's fees and the costs of this action;

(7) Plaintiff requests interest on all damages awardable under Title VII and the FMLA;

(8) Award Plaintiff punitive damages against Defendants.

(9) Provide any other relief the Court deems appropriate.

## JURY TRIAL DEMAND

Plaintiff requests a jury trial on all issues triable by jury.

                Respectfully submitted,

                PANZA, MAURER, MAYNARD & NEEL, P.A.
                Bank of America Building, Third Floor
                3600 North Federal Highway
                Ft. Lauderdale, FL 33308

By: _/s/ Melissa Negron_____
      MARK A. HENDRICKS
      Fla. Bar No. 768146
      MELISSA NEGRON
      Fla. Bar No. 54501

F:\CLIENT\00954\99-13451\PLEADING\BLAKE.CPT

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

# NOTICE OF RIGHT TO SUE

*(Issued on request)*

| To: Heidi Blake<br>3646 VICTORIA DRIVE<br>WEST PALM BEACH, FL 33406 | From:<br>EQUAL EMPLOYMENT OPPORTUNITY COMM.<br>St. Louis District Office<br>1222 Spruce St. Room 8.100<br>St. Louis, MO 63103 |
|---|---|

☐ *On behalf of a person aggrieved whose identity is CONFIDENTIAL (29 C.F.R. 1601.7(a))*

| Charge Number | EEOC Representative | Telephone Number |
|---|---|---|
| 150993240 | Richard W. Schuetz | (314) 539-7800 |

( See the additional information attached to this form )

**NOTICE TO THE PERSON AGGRIEVED:**
**Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act (ADA):** This is your Notice of Right to Sue. It is issued under Title VII and/or the ADA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII or the ADA **must be filed in federal court WITHIN 90 DAYS of your receipt of this Notice.** Otherwise, your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

[X] More than 180 days have passed since the filing of this charge.
☐ Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of the charge.
[X] The EEOC is terminating its processing of this charge.
☐ The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☐ The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.
☐ The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of your charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required). EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit based on this charge, please send a copy of your court complaint to this office.

On Behalf of the Commission

_____
Lynn Bruner, Director

AUG 1 5 2000
*(Date)*

Enclosure(s)

cc: Lockheed Martin Electroni
Ms. Sharon J Savage
5600 Sand Lake Road
Orlando, FL 32819-8907

EEOC FORM 161-B (Rev 01/97)                                                                                             **RESPONDENT REP COPY**